### INDIANAPOLIS WATER CO. v. McCART et al.

#### No. 1403.

District Court, S. D. Indiana, Indianapolis Division.

Oct. 27, 1934.

.See, also, 13 F.Supp. 110.

Baker & Daniels, of Indianapolis, Ind. (William L. Ransom, of New York City, and Joseph J. Daniels and G. R. Redding, both of Indianapolis, Ind., of counsel), for plaintiff.

Philip Lutz, Jr., Atty. Gen., Urban C. Stover, First Deputy Atty. Gen., James E. Deery, Corp. Counsel, and Floyd J. Mattice, City Atty., both of Indianapolis, Ind. (Edward H. Knight, of Indianapolis, Ind., of counsel), for defendants.

Before EVANS, Circuit Judge, and BALTZELL and SLICK, District Judges.

BALTZELL, District Judge.

The plaintiff is an Indiana corporation operating as a public utility and supplies Indianapolis and the citizens thereof with water, and has so supplied them for many years. It operates under an indeterminate permit issued by the Public Service Commission of Indiana, and was so operating during the year 1932.

Early in the year of 1932, the Public Service Commission of Indiana (now the Public Service Commission, Acts of 1933, c. 93, p. 663), hereinafter referred to as the "Commission," began an investigation of the value of plaintiff's property and the revenue received by it, looking toward an adjustment and revision of the rates under which it was then operating, and which were being paid by the water consumers of Indianapolis. Before a complete appraisal had been made by the Commission to ascertain such value, it determined that the rates in force were too high and that it was justified in making effective immediately a schedule of rates to be and remain in effect temporarily only, or until the appraisal, etc., could be completed and a permanent schedule adopted and made effective. This action was taken pursuant to authority given the Commission to adopt emergency rates. Burns' Ann.St. 1926, § 12795. The temporary schedule was to become effective as of July 5, 1932.

The plaintiff was convinced that if it was compelled to operate under the temporary schedule of rates thus adopted by the Commission, it would be in violation of its constitutional rights and amount to a confiscation of its property in violation of the Fourteenth Amendment to the Constitution of the United States. Consequently, it filed in this court a bill in equity seeking to enjoin the enforcement of the order of the Commission making effective the temporary schedule of rates. The bill was filed on the 1st day of July, 1932, in which bill the plaintiff sought and pressed its petition for an interlocutory injunction. A three-judge court was organized pursuant to section 266 of the Judicial Code, as amended (28 U.S.C.A. § 380), and heard such petition. The petition for an interlocutory injunction was denied, and the temporary schedule of rates became effective.

The Commission continued its appraisal and investigation, with the result that a permanent schedule of rates was adopted by it on December 30, 1932, and by its order became effective as of January 1, 1933. This was an entirely different schedule from that against the enforcement of which the plaintiff had sought an interlocutory injunction in July, 1932. The suit in which the interlocutory injunction had been denied was still pending, however, in this court. Immediately following the entry of the order by the Commission fixing the permanent schedule of rates, under date of December 30, 1932, the plaintiff did, on the 31st day of December, 1932, file what it called an "amended and supplemental bill" in the same cause in which the interlocutory injunction had been denied. In its amended and supplemental bill, plaintiff sought a permanent injunction against the enforcement of the permanent schedule of rates contained in the order of the Commission, which became effective January 1, 1933. Such amended and supplemental bill did not seek an interlocutory injunction, but simply sought a permanent injunction against the enforcement of such order upon final hearing. Upon this state of the record, the question, therefore, naturally arises as to whether or not the three-judge court, which was organized and heard the application for an interlocutory injunction against the enforcement of the temporary schedule of rates, continues for the purpose of determining the constitutionality of the permanent schedule of rates. If plaintiff had abandoned the original action, and, instead of filing its amended and supplemental bill therein, had filed an original bill in a new cause in which no temporary or interlocutory relief had been sought,

then such cause would not have been one which called for the convening of a statutory three-judge court, but would have been one for a single judge. The question is one which is not altogether free from doubt. No precedent is found among the reported cases for our guidance. Section 266 of the Judicial Code, as amended (28 U.S.C.A. § 380), provides that: "No interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a State by restraining the action of any officer of such State in the enforcement or execution of such statute, or in the enforcement or execution of an order made by an administrative board or commission acting under and pursuant to the statutes of such State, shall be issued or granted by any justice of the Supreme Court, or by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, upon the ground of the unconstitutionality of such statute, unless the application for the same shall be presented to a justice of the Supreme Court of the United States, or to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a justice of the Supreme Court or a circuit judge, and the other two may be either circuit or district judges. * * * The requirement respecting the presence of three judges shall also apply to the final hearing in such suit in the district court."

Prior to the amendment of this section in 1925, such statutory three-judge court was required to hear the petition for an interlocutory injunction only. A single judge presiding in the final hearing could reverse the action of the three judges upon substantially the same evidence. This apparently gave rise to the amendment. It has been held that a three-judge court is necessary only when a petition for an interlocutory injunction is "made and pressed." See Smith et al. v. Wilson et al., 273 U.S. 388, 47 S.Ct. 385, 71 L.Ed. 699. In other words, a bill may seek an interlocutory injunction in its prayer, but such relief may be abandoned by plaintiff and a single judge may preside and determine the cause upon final hearing. The amended bill in the instant case supersedes and eliminates from consideration the original bill. It would seem, therefore, the relief sought in the original bill naturally is eliminated from consideration by the court.

See Westerman v. Foster, 57 Ind. 408; Humphrey v. City National Bank, 190 Ind. 293, 130 N.E. 273; Bedell v. Baltimore & Ohio Railway Co. (D.C.) 245 F. 788. The only difference between the hearing required upon the amended and supplemental bill in the instant case, and which would be required if filed in a separate action, is that of assigning it a separate number upon the docket and requiring the plaintiff to file another cost bond and make the necessary deposit for costs, if filed in a separate cause. The relief which plaintiff seeks is entirely different from that sought in the original bill, which is no longer a part of the record. The convening of a three-judge court is naturally cumbersome and expensive. It tends in some cases to unnecessarily delay a final decision, although precedence has always been given such cases in this district over the regular docket. District Courts have been cautioned by the Supreme Court of the United States against lightly extending such class of cases. The language of that court in the recent case of Oklahoma Gas & Electric Co. v. Oklahoma Packing Co., 292 U.S. 386, 54 S.Ct. 732, 734, 78 L.Ed. 1318, is rather significant, wherein, speaking through Justice Stone, it says: "When it becomes apparent that the plaintiff has no case for three judges, though they have been properly convened, their action is no longer prescribed." This language indicates that even though a three-judge court has been convened in any case, and it afterwards appears that such procedure is unnecessary, such court should no longer function. In a recent case, decided by a three-judge court in the Northern District of Georgia, and entitled Georgia Continental Telephone Co. v. Georgia Public Service Commission et al. (D.C.) 8 F.Supp. 434, it was held, in substance, that a supplemental bill is, in reality, a new suit in so far as determining the jurisdiction of the court is concerned. While this case did not have the question of whether or not it was a three-judge matter or one to be determined solely by the district judge, yet it did hold that because of the fact that the Johnson Act (Act Feb. 13, 1925, 43 Stat. 936, § 1, 28 U.S.C.A. § 380) intervened between the filing of the original bill and the filing of the supplemental bill, the court had no jurisdiction. As has been pointed out by plaintiff in the instant case, it is very important that the proper court hear the exceptions to the master's report, and enter

the final decree. The rights of the parties and of the public demand this. There being no precedent to follow, we can be guided only by a reasonable and fair construction of the statute providing for a three-judge court, applying the rules of construction and considering the various statements of the Supreme Court in passing upon different questions presented under such statute. While the judge of this court would welcome the assistance of two other judges to share the great responsibility of determining the many questions presented in the instant case, yet we believe that it is not one that requires the continuance of a three-judge court under the statute. Therefore, the issues presented by the "amended and supplemental bill," and the answer and amendments thereto, will be heard and determined by a single judge.